# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAMELA MOORE,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:06-cv-780
Barrett, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 21), the Commissioner's response in opposition (Doc. 28), and plaintiff's reply

memorandum. (Doc. 29).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1961 and has a ninth grade education. Her past relevant work was

as a waitress and nurses aid. Plaintiff filed an application for DIB in November 2002 alleging an

onset date of disability of September 3, 1992, due to fibromyalgia, muscle damage, low blood

pressure, a herniated disc, and arthritis. Her application was denied initially and upon

reconsideration. Plaintiff requested and was granted a de novo hearing before an administrative

law judge (ALJ).

Plaintiff, who was represented by counsel, appeared at a hearing before ALJ Larry Temin.

By a decision dated December 22, 2004, the ALJ concluded plaintiff was not disabled under the

Act and denied her application. (Tr. 11-18). The Appeals Council denied the request for review and plaintiff sought judicial review in this Court.

This Court remanded plaintiff's case back to the Commissioner under Sentence Six of 42 U.S.C. § 405(g) based on a missing tape recording of plaintiff's ALJ hearing. (Tr. 550-51). Pursuant to that remand, ALJ Temin held a second hearing on March 23, 2009, at which plaintiff, a vocational expert, and two lay witnesses testified. (Tr. 598-625).

On April 22, 2009, the ALJ issued a decision denying plaintiff's DIB application. The issue before the ALJ was whether plaintiff was disabled on or before December 31, 1993, the date plaintiff's insured status expired for purposes of DIB. (Tr. 537). The ALJ determined that as of December 31, 1993, plaintiff suffered from severe lumbosacral degenerative disc disease and myofascial pain syndrome, but that such impairments did not meet or equal the level of severity described in the Listing of Impairments. (Tr. 540). According to the ALJ, prior to her date last insured, plaintiff retained the residual functional capacity (RFC) to perform a limited range of sedentary work: she could lift/carry/push/pull up to 10 pounds occasionally and 5 pounds frequently; stand and/or walk for 2 hours in an eight-hour workday and for 30 minutes at a time, then must be able to sit for 5 minutes; sit for 2 hours at a time, then must be able to stand for 2 to 3 minutes; only occasionally stoop, kneel, crouch, or climb ramps/stairs; but she could not crawl, climb ladders/ropes/scaffolds, perform work requiring the forceful use of the right or left lower extremities, work at unprotected heights, or work around hazardous machinery. (Tr. 540). The ALJ determined that plaintiff's subjective allegations concerning the limiting effects and persistence of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 16). The ALJ determined that plaintiff was unable to perform her past relevant

2

work prior to her date last insured, but based on the testimony of the vocational expert plaintiff was able to perform a significant number of other jobs in the national economy. (Tr. 545). Accordingly, the ALJ concluded that plaintiff was not disabled under the Act from September 2, 1992, her alleged onset date, through December 31, 1993, the date her insured status lapsed for purposes of Disability Insurance Benefits. (Tr. 546).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected

3

to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v.*

4

*Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365,

5

1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially

greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)*; Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of

specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so

that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 21 at 3-4; Doc. 28 at 3-7) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns four errors in this case: (1) the hypothetical question asked by the ALJ and answers thereto are not significant evidence to be relied upon by the Commissioner; (2) the hypothetical question did not take into account all of plaintiff's severe conditions; (3) the Commissioner below did not properly follow the treating physician rule; and (4) the Commissioner below did not correctly evaluate plaintiff's chronic pain, fibromyalgia, and credibility. (Doc. 21 at 2). For the reasons that follow, the Court finds the decision of the ALJ is supported by substantial evidence and should be affirmed.

To establish her claim for disability benefits, plaintiff was required establish she was disabled on or before December 31, 1993, the date her insured status expired for purposes of Disability Insurance Benefits. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). While plaintiff was not required to prove she was disabled for a full twelve months *prior* to the expiration of her insured status, *Id.*, she was required to prove "the onset of disability" prior to the expiration of her insured status and that such disability lasted for a continuous period of twelve months. *See Gibson v. Secretary*, 678 F.2d 653, 654 (6th Cir. 1982); 42 U.S.C. § 423(d)(1)(A). Post-expiration evidence may be considered, but it must relate back to plaintiff's

9

condition prior to the expiration of her date last insured. *King v. Sec. of Health and Human Servs.,* 896 F.2d 204, 205-06 (6th Cir. 1990).

Plaintiff first contends the ALJ failed to accord proper deference to the opinions of plaintiff's treating physicians, Drs. Welsh and Mullins, in assessing plaintiff's RFC. Both Drs. Welsh and Mullins opined that plaintiff was "disabled." Plaintiff asserts the ALJ failed to provide good reasons for discounting these physicians' opinions and failed to base his RFC finding on the evidence of record. (Doc. 21 at 4).

In support of this argument, plaintiff cites to the February 1996 report of Dr. Welsh, a physical medicine specialist, who opined that plaintiff's chronic post-traumatic myofascial pain syndrome[1] "has been significantly disabling." (Tr. 222). Dr. Welsh also stated, "At this point, I don't feel that she can be expected to sustain any significant remunerative activity, given her current condition, in the foreseeable future." (Tr. 222).

The ALJ declined to give controlling or even significant weight to the opinion of Dr. Welsh. His decision in this regard is supported by substantial evidence in the record and should be affirmed.

Dr. Welsh's opinion that plaintiff is "disabled" and "unable to work" is not entitled to any deference. The ALJ was responsible for determining whether plaintiff met the statutory definition of disability prior to her date last insured based on the medical and vocational evidence in the record. *See* 20 C.F.R. § 404.1527(e)(1). As the ALJ reasonably noted, the evidence from plaintiff's treating physician failed to show plaintiff met the requirements for disability any time

---

[1]"[M]yofascial pain syndrome is defined as irritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)." *Mondragon v. Apfel*, 3 Fed. Appx. 912, 915 (10th Cir. 2001) (internal quotations and citations omitted).

prior to December 31, 1993.

The ALJ noted that Dr. Welsh's February 1996 pronouncement of "disability" did not include any specific functional limitations shedding light on plaintiff's functional abilities prior to December 31, 1993. Nor did Dr. Welsh offer any opinion prior to December 31, 1993 on plaintiff's functional capacity. (Tr. 543). Other than tenderness and pain-related limitation of motion, Dr. Welsh consistently reported minimal and insignificant findings on examination and by objective testing and that plaintiff showed continued improvement after her September 1992 auto accident. (Tr. 543-44).[2] In November 1992, Dr. Welsh reported that plaintiff was experiencing less pain on most days and was making progress with physical therapy. (Tr. 214). Dr. Welsh also opined that plaintiff had myofascial pain syndrome which was expected to resolve with conservative care. (Tr. 214). Dr. Welsh reported in February 1993 that plaintiff was "improved" and had less pain. (Tr. 216). She was advised to continue with her home exercise program, was making gradual improvement despite some bad days, and was expected to make a full recovery. (Tr. 217). In August 1993, plaintiff was seen for a set back. (Tr. 218). She had been doing reasonably well, "exercising well at home, up to 30 to 40 repetitions of each exercise, when suddenly she experienced increasing low back and neck pain, with bilateral shoulder and

---

[2]*See, e.g.*, Oct. 1992, Tr. 213: normal reflexes, no atrophy or fasciculation, no inflamed or irritable joints, negative straight leg raising; Nov. 1992, Tr. 214: no motor, sensory, or reflex changes, no paresthesias, no weakness, and no bladder or bowel dysfunction; normal CT and X-rays of neck and back; experiencing less pain on most days; no lateralizing neurological findings; making gradual progress with physical therapy; Feb. 1993, Tr. 216: "improved" with less pain, no paresthesias, weakness, or bladder or bowel problems; Tr. 217: MRI study "essentially normal" except for some very mild disc bulging at L4-5, normal reflexes, negative straight leg raising, and intact strength with no sensory deficits; Aug. 1993, Tr. 218: negative straight leg raising, intact strength, symmetric reflexes, and intact sensation, and tenderness in her back, neck and shoulders, normal EMG with no indications of significant radiculopathy, neuropathy, myopathy, or peripheral impingement syndrome; July 1994, Tr. 220 (post-insured status): no motor, sensory, or reflex changes, full range of motion in both shoulder and neck; Oct. 1994, Tr. 221: no radicular or myelopathic signs on examination. Plaintiff was not seen again by Dr. Welsh for over one year until the exam of February 1996. (Tr. 222).

left lower extremity pain." (Tr. 218). Dr. Welsh ordered an EMG which was essentially normal. (Tr. 219, 251). Plaintiff was not seen again by Dr. Welsh until one year later in July 1994. (Tr. 220). At that time she complained primarily of left-sided neck, shoulder and arm pain. (Tr. 220). Dr. Welsh assessed myofascial neck and shoulder pain with no lateralizing findings and prescribed medication for pain. *Id*. There is nothing in Dr. Welsh's reports for the relevant time period which would indicate that plaintiff was so severely restricted as to preclude even sedentary work activity. Based on these reports, the ALJ reasonably concluded that plaintiff was not precluded from performing the sitting and lifting required for sedentary work. The ALJ was not constrained by Dr. Welsh's conclusory opinion of "disability" where such opinion was not supported by the clinical and objective evidence. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

The ALJ also noted inconsistencies in Dr. Welsh's statements in declining to give Dr. Welsh's disability opinion great weight. (Tr. 543). In February 2000, Dr. Welsh reported that plaintiff's conditions were "a direct result" of a second automobile accident in April 1999. (Tr. 238). Three years later, in February 2003, he attributed plaintiff's inability to work to her first automobile accident in September 1992. (Tr. 374). The inconsistency of a treating physician's opinion is a factor the ALJ may consider in determining the weight to accord such opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Contrary to plaintiff's assertions, the ALJ gave specific reasons, based on the evidence of record, for discounting Dr. Welsh's conclusory opinion of disability. A treating physician's "broad conclusory formulations, regarding the ultimate issue which must be decided by the Secretary, are not determinative of the question of whether or not an individual is under a

12

disability." *Kirk v. Sec.,* 667 F.2d 524, 538 (6th Cir. 1981). Plaintiff has made no attempt to address the specific reasons cited by the ALJ and instead relies on Dr. Welsh's longevity of treatment of plaintiff as the basis for reversal. (Doc. 21 at 4). The ALJ reasonably determined that Dr. Welsh's opinion of disability was inconsistent with and unsupported by his actual treatment notes in 1992 and 1993. The ALJ's decision in this regard is supported by substantial evidence and should be affirmed.

Plaintiff also cites to the May 2004 RFC report of Dr. Mullins, plaintiff's primary physician, which indicated that plaintiff was unable to work for a full eight-hour day. Dr. Mullins opined that plaintiff was limited to sitting for no more than two hours in an eight hour workday and to standing/walking for no more than two hours in an eight hour workday with 15 minute rest periods. (Tr. 460-62). Dr. Mullins also limited plaintiff to occasional lifting of 10 pounds and frequent lifting to less than 10 pounds. (Tr. 460). In a June 2004 letter, Dr. Mullins stated, "I believe Ms. Moore continues to be totally disabled. She consistently experiences pain with limitations of motion as well as of a nonexertional nature. I feel her functional limitations are about the same as 1993 but progressively getting worse." (Tr. 478).

The ALJ gave little weight to Dr. Mullins' opinion of disability. Dr. Mullins did not provide any functional capacity assessment prior to December 31, 1993 and his 2004 opinion that plaintiff was "totally disabled" was made more than ten years after the expiration of plaintiff's insured status. While Dr. Mullins opined that plaintiff's "functional limitations are about the same as 1993" (Tr. 478), the ALJ reasonably concluded that Dr. Mullins' progress notes and the record as a whole did not support the physician's recommended limitations prior to December 31, 1993. (Tr. 543). As the ALJ noted, the record showed no positive findings other than

13

tenderness and pain-related limitation of motion, and repeated imaging was essentially normal. (Tr. 543-44). X-rays of plaintiff's cervical spine were normal (Tr. 173), and a CT scan of her head was normal, while a CT of her spine showed only some disc bulging at L3-4 and L4-5 with no evidence of disc herniation. (Tr. 171).

Dr. Mullins' actual progress notes are quite limited for the relevant time period and are not indicative of a disabling impairment. Dr. Mullins saw plaintiff three times in September 1992 following plaintiff's automobile accident. (Tr. 94-96). An October 1992 note shows a prescription was written for plaintiff with a referral to a Dr. Hawk in March 1993, but does not reflect plaintiff was examined by Dr. Mullins. (Tr. 97, 99-100). At plaintiff's one examination in 1993, Dr. Mullins diagnosed diffuse musculoskeletal pain, post-traumatic. (Tr. 98). The next progress note by Dr. Mullins is dated October 25, 1994, some 10 months after plaintiff's insured status expired, and reflects a diagnosis of diffuse muskuloskeletal pain. (Tr. 101). Dr. Mullins' progress notes of December 8, 1994 and March 13, 1995, do not reveal any significant clinical or objective findings and reflect a diagnosis of chronic back pain. (Tr. 102-103). The ALJ reasonably concluded that Dr. Mullins' limited progress notes do not support his conclusion that plaintiff was "totally disabled" during 1992 and 1993. The records post-dating December 31, 1993 indicate plaintiff's most significant pain began after the date her insured status lapsed, particularly in response to her second car accident in 1999. (Tr. 544). They do not, however, relate back to plaintiff's condition prior to the expiration of her date last insured.[3]

Again, plaintiff has not pointed to any significant findings prior to the expiration of her

_____

[3]Plaintiff also asserts the ALJ failed to correctly evaluate her chronic pain and credibility. (Doc. 21 at 2). However, plaintiff fails to present any facts, argument, or legal authority in support of this assignment of error. Therefore, the Court declines to address it.

insured status which support Dr. Mullins' extreme limitations prior to December 31, 1993. Rather, plaintiff cites to plaintiff's diagnosis of "fibromyalgia," a condition that cannot be confirmed by objective testing,[4] and the length of treatment provided by her treating physician in support of her argument that the ALJ should have accepted Dr. Mullins' RFC despite the absence of objective findings. (Doc. 21 at 4-5, 6). Yet, Dr. Mullins' treatment notes do not reflect a diagnosis of fibromyalgia until August 11, 1999, nearly six years *after* plaintiff's insured status expired. (Tr. 139).[5] The diagnosis of a condition after the expiration of plaintiff's insured status supports the ALJ's finding of non-disability for the relevant time period. *See Wirth v. Commissioner of Social Security*, 87 Fed. Appx. 478, 480 (6th Cir. 2003). Thus, the ALJ's conclusion that Dr. Mullins' RFC did not support a finding of disability prior to the date plaintiff's insured status lapsed is supported by substantial evidence in the record.

It is the ALJ's function to determine a plaintiff's RFC based on the record as a whole. 20 C.F.R. § 404.1546. Here, the ALJ credited Dr. Mullins' assessment in part as well as plaintiff's allegations of pain in crafting plaintiff's RFC for 1992 to 1993. The ALJ reasonably determined that the record did not establish plaintiff was unable to sit for prolonged periods of time prior to

---

[4]Fibromyalgia is a condition which "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817-820 (6th Cir. 1988). Unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Id.* at 820. *See also Rogers v. Commissioner*, 486 F.3d 234, 243-44 (6th Cir. 2007) ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant").

[5]Likewise, Dr. Welsh made no diagnosis of a "fibrositic" type syndrome or "fibromyalgia" until many years after plaintiff's insured status lapsed. *See* Tr. 224, 227. In any event, a diagnosis of fibromyalgia does not automatically entitle a claimant to disability benefits, particularly where, as here, substantial evidence supports the ALJ's finding that plaintiff's back and neck impairments were improving or stable prior to the expiration of her insured status. *See Vance v. Commissioner*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)).

December 31, 1993, and did not preclude sedentary work activity for the relevant time period. The ALJ accommodated plaintiff's complaints of pain and credited Dr. Mullins' assessment, in part, by providing an RFC that permitted alternate sitting and standing throughout an 8-hour workday. (Tr. 544). The ALJ also limited plaintiff's postural activities in response to her back and lower extremity pain. *Id.* Likewise, the ALJ's RFC reasonably precluded crawling, climbing ladders/ropes/scaffolds, performing work requiring the forceful use of the right or left lower extremities, work at unprotected heights, or work around hazardous machinery based on plaintiff's back and lower extremity pain and the side effects of medication. *Id.* As the medical reports for the relevant time period indicate that plaintiff was capable of performing a range of sedentary work with restrictions, the ALJ's residual functional capacity assessment is supported by substantial evidence and should be affirmed.

Plaintiff also argues the ALJ erred by not finding plaintiff suffers from depression as noted by Dr. Gray, an assistant professor of clinical medicine at the Ohio State University, who examined plaintiff on November 19, 1993. (Doc. 21 at 6, Tr. 293). While Dr. Gray noted mild depression, plaintiff has cited to absolutely no other evidence of a mental impairment in the record in support of her claim of "severe" depression. The ALJ did not err by not finding plaintiff suffered from severe depression prior to her date last insured.

Plaintiff also contends the ALJ erred in rejecting the testimony of third party witnesses who testified about plaintiff's limitations. (Doc. 21 at 6). The ALJ determined that the record did not corroborate the testimony of these witnesses who were not impartial witnesses and who relied on plaintiff's subjective allegations for their opinions. (Tr. 544). The assessment of the credibility of lay witnesses, as well as the weight to attribute their testimony, is peculiarly within

16

the judgment of the ALJ. The testimony of a lay witness "must be given 'perceptible weight' [only] where it is supported by medical evidence." *Allison v. SSA,* No. 96-3261, 108 F.3d 1376, (6th Cir. 1997)(unpublished), 1997 WL 103369, at *3 (citing *Lashley v. HHS,* 708 F.2d 1048, 1054 (6th Cir.1983) ("Perceptible weight must be given to lay testimony where . . . it is fully supported by the reports of the treating physicians.")). *See also Simons v. Barnhart,* 114 Fed. Appx. 727, 733 (6th Cir. 2004). As discussed above, neither the reports of Drs. Welsh nor Mullins support plaintiff's claim for disability prior to December 31, 1993, her date last insured. Thus, the ALJ was within his prerogative in declining to give weight to the lay opinions. *See Melvin v. Secretary of Health and Human Services,* 762 F.2d 1009 (6th Cir. 1985) (unpublished), 1985 WL 13223, at *3 ("Although the lay witness testimony may be fully supported by the subjective conclusions of the treating physicians as to the plaintiff's credibility, such testimony is not fully supported by the medical reports. Under these circumstances, the Secretary did not err in refusing to address the lay witness testimony.").

Lastly, plaintiff contends the ALJ erred by relying on the vocational expert's responses to a hypothetical question that did not take into account all of plaintiff's severe conditions. The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). However, "the ALJ is not obliged to incorporate unsubstantiated

complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

As explained above, the ALJ's rejection of Dr. Mullins' functional assessment for the 1992-1993 time period is supported by substantial evidence. Therefore, the ALJ's failure to include such limitations in his hypothetical question to the vocational expert is not erroneous. Likewise, the failure to include plaintiff's own allegations concerning her pain and limitations for the relevant time period is not erroneous, where such allegations were not accepted as credible. *Casey v. Sec. of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Therefore, the ALJ did not err in the hypothetical question posed to the vocational expert.

For the above reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 5/17/10

Timothy S. Hogan
United States Magistrate Judge

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAMELA MOORE,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:06-cv-780
Barrett, J.
Hogan, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).